IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LINNETTE FALCON-CUEVAS,

**Plaintiff,**

**v.**                                    **Civil No.** 12-1892 (FAB)

PUERTO RICO PORTS AUTHORITY, *et al.*,

**Defendants.**

OPINION AND ORDER[1]

BESOSA, District Judge.

Before the Court is defendant Gilberto Casillas-Esquilin's motion to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) ("Rule 12(b)(6)").  (Docket No. 13.)  For the reasons discussed below, the Court **GRANTS in part and DENIES in part** defendant's motion.

I.   **BACKGROUND**

A.   **Procedural Background**

On October 12, 2012, plaintiff Linnette Falcon-Cuevas ("Falcon") filed a political discrimination complaint pursuant to 42 U.S.C. § 1983 ("section 1983") against defendant Puerto Rico Ports Authority ("PRPA"), defendant Gilberto Casillas-Esquilin

---

[1] Logan Brown, a second-year law student at the Georgetown University Law Center, assisted in the preparation of this Memorandum and Order.

("Casillas"), and defendant Ivelisse Castro-Guzman[2] ("Castro").[3]
(Docket No. 1 at p. 2.)   Plaintiff Falcon alleges general
constitutional violations of her First, Fifth, and Fourteenth
Amendment rights.  Id.  She also alleges that, as a registered
member of the Popular Democratic Party ("PDP"), she was treated
substantially less favorably than similarly situated New-
Progressive-Party-affiliated employees in violation of the equal
protection clause of the Fourteenth Amendment.   Additionally,
plaintiff Falcon asserts that the Court has supplemental
jurisdiction over her Puerto Rico law claims.[4]

On January 14, 2013, defendant Casillas filed a motion to
dismiss pursuant to Rule 12(b)(6).  (Docket No. 13.)  He alleges
that plaintiff Falcon (1) failed to file her claim during the
appropriate limitations period, (2) fails to state a claim for
which relief can be granted pursuant to section 1983, (3) fails to
state a claim pursuant to the Fifth Amendment, and (4) fails to
state an equal protection claim pursuant to the Fourteenth

---

[2] Defendant Castro is listed as a defendant in the complaint,
but has not been served.

[3] Plaintiff Falcon also includes the spouses of defendants
Casillas and Castro, and their respective conjugal partnerships as
defendants.

[4] Plaintiff Falcon brings claims pursuant to Law Number 100 of
1959 of the Laws of Puerto Rico, P.R. Laws Ann. tit. 29 § 146; and
"Article II, §§ 1, 4, 6, 7 of the Constitution of the Commonwealth
of Puerto Rico."  (Docket No. 1 at p. 3.)

Amendment.  (Docket No. 13 at pp. 6-13.)  Plaintiff Falcon did not oppose defendant Casillas' motion to dismiss.

### B.   Factual Background

As required by the standard Rule 12(b)(6) analysis, the Court treats as true the following non-conclusory factual allegations stated in the plaintiff's complaint, <u>Ocasio-Hernandez v. Fortuño-Burset</u>, 640 F.3d 1, 10 (1st Cir. 2011):

Plaintiff Falcon is an employee of the PRPA and a registered member of the PDP.[5]  (Docket No. 1 p. 3.)  During the events alleged in the complaint, plaintiff Falcon was a Special Aide to the Human Resources Office of the PRPA.  <u>Id.</u> at p. 8.  On April 2, 2012, defendant Casillas was appointed as the Director of Human Resources of PRPA.  <u>Id.</u> at p. 9.  Plaintiff Falcon alleges that defendant Casillas is "an activist and supporter" of the New Progressive Party ("NPP").[6]  <u>Id.</u> at p. 5.

In her complaint, plaintiff Falcon alleges that as a result of her political affiliation, (1) she was stripped of functions and duties inherent to her position as Special Aide, and (2) that she was denied the position of Head Assistant of

_____

[5]  The Court notes plaintiff Falcon's inconsistency in referring to the Popular Democratic party as both PPD and PDP.  PPD is the Spanish acronym for Partido Popular Democratico, in English the Popular Democratic Party.  The Court would prefer that plaintiff Falcon use uniform abbreviations in all future documents.

[6]  As noted in note 5, the Court assumes that when the complaint refers to "PNP" and "NPP," it means the New Progressive Party.

Purchasing and Auctions.  (Docket No. 1 at p. 2.)  Plaintiff Falcon contends that she was so "viciously and maliciously" discriminated against when she was stripped of tasks and denied the position that she applied for that she "has suffered severe and substantial economic and emotional damages" amounting to no less than $3,200,000.00 in damages.  Id. at p. 20-21.

### 1.   Alleged Discriminatory Treatment at PRPA

The NPP administration officially assumed control of the Puerto Rico government in 2009, and plaintiff Falcon alleges that as a result of this change she experienced a series of discriminatory acts.  (Docket No. 1 at pp. 6-7.)  First, on or around March 11, 2011, Falcon was denied "study leave" by then-PRPA deputy director Bernardo Vazquez ("Vazquez").  Id. at p. 7.  Falcon felt discriminated against for "political reasons" because her request was denied while the request of Blanca Saez, a member of the NPP, was granted.  Plaintiff Falcon voiced these concerns to Vazquez.  Id.

Second, plaintiff Falcon alleges that, as the Director of Human Resources, defendant Casillas entrusted tasks that belonged to plaintiff Falcon's position to Jannette Vega ("Vega"), a Human Resources Specialist.  (Docket No. 1 at p. 9.) Plaintiff Falcon alleges that she was repeatedly "ignored" and "by passed" by defendant Casillas.  Id.  Defendant Casillas told plaintiff Falcon that she should suspend her work with the Drug

Testing Manual because the task had been delegated to the Federal Funds Office.  Id. at p. 10.

On May 10, 2012, plaintiff Falcon met with defendant Casillas to discuss her lack of tasks.  (Docket No. 1 at p. 10.) In the meeting, plaintiff Falcon informed defendant Casillas that she understood the removal of tasks to be a result of her non-affiliation with the NPP, which was the political party of the current administration.  Id.  Defendant Casillas answered that plaintiff Falcon should not feel that way, and said that he had been told by Vazquez that "Linette is the only PDP employee that did not pretend to be of any other party in order to benefit herself — she who is trustworthy about less remains trustworthy." Id.

On May 12, 2012, plaintiff Falcon and defendant Casillas met, once more, to discuss plaintiff Falcon's lack of tasks.  (Docket No. 1 at p. 10.)  During their meeting, defendant Casillas took a phone call where he said that a person who had been interviewed was a good candidate, but that "we have the need to accommodate our people within the Agency first and then I will seek other alternatives to accommodate the rest of our people before the

elections."[7]  Id. at 11.  After the phone call, plaintiff Falcon asked if there was a reason why she was not being assigned tasks. Id.  Defendant Casillas responded that he was told by defendant Castro which employees were supposed to help him with the Human Resources Office's tasks.  Id.  Once again, plaintiff Falcon alleged to defendant Casillas that the removal of her tasks was politically motivated.  Id.  Defendant Casillas "nervously" ended the meeting and requested that plaintiff Falcon put her concerns in writing, so they could be discussed with defendant Castro.  Id.

On June 14, 2012, plaintiff Falcon "informally learned, through a phone conversation with the State Office of the Ombudsman," that she was removed as PRPA Ombudsman Coordinator, and that defendant Castro had been appointed to replace her.  (Docket No. 1 at p. 12.)  Plaintiff Falcon, however, has yet to receive the official letter from the PRPA Executive Director that will officially remove her from this designation.  Id.  On August 31,

_____

[7] Plaintiff Falcon alleges that defendant Casillas would make other comments related to the appointment of PNP members to positions at PRPA including saying to Vega:

[R]elax [Vega] keep making personnel transactions to accommodate our people.  If they ask why we haven't been successful in appointing all of them I will explain that the Budget Office (OGP) has not approved them.  Then I will go to my friend Tommy Rivera-Schatz[, then President of the Senate of Puerto Rico, and a member of the PNP,] and inform him about this and he will straighten OGP and things will be solved.

(Docket No. 1 at p. 11.)

2012, employees of the Human Resources Office, including plaintiff Falcon, filed a letter "requesting that their corresponding merit steps be granted in accordance with the applicable Personnel Manual" because the majority of merit steps recommended by Castro were of NPP-affiliated employees. Id. at p. 15-16. The PRPA Deputy Director reversed the merit steps granted by Castro. Id. at 16.

On September 11, 2012, Vega informed plaintiff, via email, that she would no longer be the Domestic Violence Coordinator, and that Gladys Martinez would replace her.[8] Id. at pp. 12-13. When asked for the grounds for such removal, Vega responded merely that she was carrying out Casillas' instructions. Id. at p. 13. In response to a letter from plaintiff Falcon complaining about her lack of work, defendant Casillas sent her a letter, dated September 12, 2012, that listed eight tasks and jobs assigned to plaintiff Falcon from April 2012 until September 2012. Id. Plaintiff Falcon contends that the "jobs" were assigned by prior Human Resource Directors and were completed before defendant Casillas was an employee of the PRPA, and that the "tasks" "are mostly functions below the level of complexity of the work of a Special Aide." Id.

---

[8] Plaintiff Falcon fails to allege Gladys Martinez's political affiliation.

### 2.   Denial of New Position

On June 11, 2012, plaintiff Falcon submitted a job application for Job Posting No. 12-05-08 for Head Assistant of Purchasing and Auctions at the PRPA.  (Docket No. 1 at p. 13.) Plaintiff Falcon was initially disqualified for failure to meet the experience requirement.  Id. at p. 14.  After requesting reconsideration, and notwithstanding the recommendation of Eric Rolon — PRPA General Legal Counsel — that her previous experience not be considered,[9] she was granted an interview.  Id. at pp. 14-15.  On August 17, 2012, plaintiff Falcon interviewed with defendant Casillas, Eric Rolon, and Maria Isabel Sierra.  Id. at p. 15.  On August 20, 2012, plaintiff Falcon learned that defendant Castro had been selected for the position.  Id.  Plaintiff Falcon contends that defendant Castro was not better qualified for the position, and alleges that defendant PRPA could not corroborate defendant Castro's work experience.  Id.

## II.  RULE 12(b)(6) STANDARD

Rule 12(b)(6) allows the Court to dismiss a complaint when it fails to state a claim upon which relief can be granted. Fed.R.Civ.P.  12(b)(6).   When considering a motion under

---

[9] The complaint mentions that defendant Casillas also told plaintiff Falcon that he consulted with Vega, Marisol Ramos, and Mildred Muñoz, and that they also recommended that her experience not be considered.  (Docket No. 1 at p. 14.)  Plaintiff Falcon contends that these three people "were not even aware of her reconsideration," thus implying that defendant Casillas did not consult with them.  Id.

Rule 12(b)(6), a court is "obligated to view the facts of the complaint in the light most favorable to the plaintiffs, and to resolve any ambiguities in their favor." Ocasio-Hernandez, 640 F.3d at 17.  While detailed factual allegations are not necessary to survive a motion to dismiss, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Id. at 12 (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009)).  Any "[n]on-conclusory factual allegations [sic] in the complaint[, however,] must . . . be treated as true, even if seemingly incredible." Id. (citing Iqbal, 129 S.Ct. at 1951).  An adequate complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." Grajales v. P.R. Ports Auth., 682 F. 3d 40,44 (1st Cir. 2012).  The complaint need not plead facts sufficient to establish a *prima facie* case, but "the elements of a *prima facie* case may be used as a prism to shed light upon the plausibility of the claim." Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013).  A court, however, may not "attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if . . . a recovery is very remote and unlikely'." Ocasio-Hernandez, 640 F.3d at 13 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  Overall, the relevant inquiry "focuses on the reasonableness of the inference of

liability that the plaintiff is asking the court to draw from the facts alleged in the complaint."   Id.

## III. ANALYSIS

### A.   Statute of Limitations

Defendant Casillas contends that this action is barred by the statute of limitations.   (Docket No. 13 at p. 9.)   "Because [section 1983] has no internal statute of limitations, section 1983 claims 'borrow[] the appropriate state law governing limitations unless contrary to federal law.'"   Marrero-Gutierrez v. Molina, 491 F.3d 1, 5 (1st Cir. 2007) (quoting Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003)).   In Puerto Rico, First Amendment claims for political discrimination pursuant to section 1983 are subject to a one-year statute of limitations.   Morales-Tañon v. P.R. Elec. Power Auth., 524 F.3d 15, 18 (1st Cir. 2008).

The continuing violation doctrine is an exception to the statute of limitations that applies if an act, which would otherwise be time-barred, is deemed to be part of an ongoing series of discriminatory acts, and there is "some violation within the statute of limitations period that anchors the earlier claim[]."   O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001).   When there is a substantial relationship between the timely and untimely claims, the claims can be viewed as a continuing violation, and the untimely claim can be included in the complaint.   See Sabree v. United Broth. of Carpenters and Joiners Local No. 33,

921 F.2d 396, 401 (1st Cir. 1990).  In determining whether there is a substantial relationship between the claims, the First Circuit Court of Appeals has held that the most important factor is whether the plaintiff knew or should have known that she was being discriminated against at the time of the incident.  Id. at 402.  "A knowing plaintiff has an obligation to file promptly or lose his [or her] claim."  Id.

Plaintiff Falcon alleges that she was denied a study leave request in March of 2011.  (Docket No. 1 at p. 7.)  She further alleges that at that time she felt that she was being discriminated against for political reasons.  Id.  Plaintiff Falcon, however, did not file her complaint until October 24, 2012, more than one year after statute of limitations began to run in March of 2011.  Because plaintiff Falcon admits that she felt discriminated against at the time of the study leave request incident, it must be treated as a discrete act.[10]  Accordingly, the Court will not consider this incident as part of a continuing violation, and the statute of limitations for this incident has

---

[10] The Court notes, additionally, that plaintiff Falcon does not allege that defendant Casillas was involved in this incident.

run.[11]  Any claims arising from this incident are time-barred, and,
therefore, **DISMISSED WITH PREJUDICE.**

    **B.  Plaintiff's Section 1983 Political Discrimination Claim**

        "Section 1983 is the conventional vehicle through which
relief is sought for claims of political discrimination by state
actors."  Rodriguez-Reyes, 711 F.3d at 54.  Puerto Rico is
considered the functional equivalent of a state for purposes of
section 1983.  Id.  "There are two essential elements of an action
under section 1983:  (i) that the conduct complained of has been
committed under the color of state law, and (ii) that this conduct
worked a denial of rights secured by the Constitution or laws of
the United States."  Martinez v. Colon, 54 F.3d 980, 984 (1st Cir.
1995) (internal quotation marks omitted).  Within this section 1983
framework, a political discrimination claim encompasses four
elements:  "[1] that the protagonists are members of opposing
political parties; [2] that the defendant knows of the plaintiff's
political affiliation; [3] that an adverse employment action
occurred; and [4] that political affiliation was a substantial or
motivating factor behind the adverse action."  Grajales, 682 F. 3d
at 46.  When considering a Rule 12(b)(6) motion to dismiss, a court

_____

        [11]  Defendant Casillas contends that because plaintiff Falcon
was aware of the alleged political discrimination at the time of
this time-barred incident, all of plaintiff Falcon's claims are
time-barred.  The Court is not persuaded by this reasoning, and
because defendant Casillas fails to provide legal authority to
support its conclusion, the Court declines to dismiss all claims on
that ground.

Civil No. 12-1892 (FAB)                                                    13

may "limn the elements of a *prima facie* political discrimination
case as a backdrop against which [it] must decide the plausibility
of the claim." See Rodriguez-Reyes, 711 F.3d at 54.  For pleading
purposes, a plaintiff does not need to *establish* each element; the
facts contained in the complaint need only show that each element
is *plausible*.  Id. at 56.

> **1.   Opposing Political Parties**

          The complaint states that plaintiff Falcon is an
active supporter of PDP and that defendant Casillas is a member of
the NPP.  (Docket No. 1 at pp. 4-5.)  When the Court takes these
factual allegations as true, plaintiff Falcon has pleaded adequate
factual material to support a reasonable inference that the
plaintiffs and defendants are members of opposing political
parties.

> **2.   Defendant's Knowledge of Plaintiff's Political
>        Affiliation**

          The complaint alleges that Vazquez told defendant
Casillas that plaintiff Falcon was a PDP employee.  (Docket No. 1
at p. 10.)  While the rest of the complaint contains only
conclusory allegations as to defendant Casillas' knowledge of
plaintiff Falcon's political affiliation, this alleged statement,
coupled with the fact that plaintiff Falcon repeatedly told
defendant Casillas about her political affiliation, is enough to
satisfy the standard required at the pleading stage.  Accordingly,

the Court finds that it is plausible that defendant Casillas had
knowledge of plaintiff Falcon's political affiliation.

### 3.   Adverse Employment Action

Employment actions are sufficiently adverse to
support a political discrimination claim pursuant to section 1983
when those actions, objectively evaluated, place substantial
pressure on a thick-skinned employee to conform to the prevailing
political view.  Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756,
766 (1st Cir. 2010).  This standard can be met if an employee's
duties are substantially altered or taken away, even when the
employee does not lose his or her job title or salary.  See id.
at 767.

Plaintiff Falcon repeatedly alleges that defendant
Casillas took away her employment duties.  While many of the
statements are conclusory or threadbare, plaintiff Falcon does
provide factual examples like the suspension of her work on the
Drug Testing Manual, her removal as PRPA Ombudsman Coordinator, and
her removal as the Domestic Violence Coordinator.  (Docket No. 1 at
pp. 10, 12-13.)  Additionally, plaintiff Falcon claims that the
tasks defendant Casillas assigned to her were "mostly functions
below the level of complexity of the work of a Special Aide."  Id.
at p. 13.  Taking those facts in the light most favorable to
plaintiff Falcon, the Court finds that it is plausible that
plaintiff Falcon experienced an adverse employment action.

### 4. Political Affiliation as Substantial Motivating Factor

For pleading purposes, a plaintiff's complaint need not *establish* that political animus is the substantial or motivating factor behind the adverse employment action; the complaint need only show that causation is *plausible*. Rodriguez-Reyes, 711 F.3d at 56. Because direct evidence is rarely available to demonstrate an actor's motive, circumstantial evidence often suffices at the pleading stage. See id. at 56. Nevertheless, the plaintiff must do more than "[m]erely juxtapose a 'protected characteristic — someone else's politics — with the fact that the plaintiff was treated unfairly.'" Pequero-Moronta v. Santiago, 464 F.3d 29, 45 (1st Cir. 2006) (internal citations omitted). Still, "[t]here need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action. What counts is the 'cumulative effect of the [complaint's] factual allegations.'" Rodriguez-Reyes, 711 F.3d at 55 (quoting Ocasio-Hernandez, 640 F.3d at 14).

The First Circuit Court of Appeals has consistently "found similar compendia of allegations adequate to make out plausible claims of political animus." Rodriguez-Reyes, 711 F.3d at 57; see, e.g., Grajales, 692 F.3d at 49-50; Ocasio-Hernandez, 640 F.3d at 17-18. In Rodriguez-Reyes, the Court of Appeals found:

> the combination of [1] the politically charged questioning of the [employees], [2] the statements of officials indicating an intent not to renew the contracts

> of persons affiliated with other political parties, [3]
> the absence of any nondiscriminatory explanation for the
> adverse employment actions, [4] the temporal proximity of
> the regime change to the adverse employment actions, and
> [5] the replacement of the separated workers with NPP
> adherents permit[ted] a plausible inference, at the
> pleading stage, that political animus was a substantial
> or motivating factor behind the adverse employment
> actions.

711 F.3d at 57.

Although plaintiff Falcon's complaint does not contain all of the factors relied on in Rodriguez-Reyes, the Court finds that, when all factual allegations are taken as true and all ambiguities are resolved in plaintiff Falcon's favor, the complaint permits a plausible inference of political animus sufficient to survive a motion to dismiss. First, there is no allegation of politically charged questioning by defendants; the facts show that each discussion of political affiliation was initiated by plaintiff Falcon herself and none of the defendants directly talked to her about her political affiliation. Factual allegations exist, as discussed above, however, that they knew she was a PDP supporter. (Docket No. 1 at pp. 7, 10, 11, 12.) Second, although there are no allegations of statements by officials referring to planned *adverse* employment actions to PDP employees, plaintiff Falcon twice quotes defendant Casillas's statements about accommodating "our people" — once in connection with an election and once in connection to

Tomas Rivera Schatz.[12]  Third, plaintiff Falcon's allegations, taken as true, provide no other explanation for the adverse employment actions.  Fourth, the adverse employment actions began three years after the regime change, a more distant temporal proximity than has been found to support an inference of political animus in other similar cases.[13]  Compare Rodriguez, 711 F.3d at 52 (finding that adverse employment action less than two months or "[a]t the earliest practical opportunity" after the regime change had adequate temporal proximity to support an inference of political animus), and Ocasio-Hernandez, 640 F.3d at 16 (finding adverse employment action less than three months after the regime change supported an inference of political animus), with Quiles-Santiago v. Rodriguez-Diaz, 851 F. Supp. 2d 411, 425 (D.P.R. 2012) (finding adverse employment action one year after the regime change had insufficient temporal proximity to support an inference of

---

[12] Additionally, plaintiff Falcon concludes that Vazquez's alleged statement, "she who is trustworthy about less remains trustworthy," means that he thinks "if PDP comes back into power [plaintiff Falcon] would still be a PDP trustworthy person." (Docket No. 1 at p. 10.)  The Court disagrees with plaintiff Falcon's chimerical conclusion.  If anything, this quote cuts against plaintiff Falcon's allegations by suggesting that plaintiff Falcon is trustworthy in her workplace regardless of which party is in power.  Indeed, she remained in her job position for the four years after the regime change while the NPP was in power.

[13] Plaintiff alleges that she was denied a study leave request about two years after the regime change in March of 2011. (Docket No. 1 at p. 7.)  As discussed above, however, that incident was previously barred for failing to comply with the appropriate statute of limitations.

political animus). Finally, plaintiff Falcon alleges that
defendant Castro, a member of PNP, both was given her duty as PRPA
Ombudsman Coordinator[14] and awarded the job for which plaintiff
Falcon applied.

The factors do not all fall in plaintiff Falcon's
favor — particularly the temporal proximity of the adverse
employment action to the regime change. None of factors, however,
is essential to show political animus, and none needs to be
established to survive a motion to dismiss; each merely sheds light
upon the plausibility of the claim. "The relevant question for a
district court in assessing plausibility is not whether the
complaint makes any particular factual allegations but, rather,
whether 'the complaint warrant[s] dismissal because it failed *in
toto* to render plaintiff['s] entitlement to relief plausible."
Rodriguez-Reyes, 711 F.3d at 55 (quoting Twombly, 550 U.S. at 569
n. 14). Furthermore, the "paucity of direct evidence is not fatal
in the plausibility inquiry. 'Smoking gun' proof of discrimination
is rarely available, especially at the pleading stage." Grajales,
682 F.3d at 49. Accordingly, the Court finds that the cumulative
effect of plaintiff Falcon's factual allegations permits a
reasonable inference that it is plausible that political animus was

---

[14] The Court notes that plaintiff Falcon acknowledges that she
has not received the official letter from the PRPA Executive
Director that will make her alleged removal official. (Docket No.
1 at p. 12.)

the substantial or motivating factor behind the adverse employment
action.

"'[A] well-pleaded complaint may proceed even if .
. . a recovery is very remote and unlikely[;]'" the plausibility
requisite "'simply calls for enough fact to raise a reasonable
expectation that discovery will reveal evidence of the illegal'
conduct." Ocasio-Hernandez, 640 F.3d at 13, 17 (quoting Twombly,
550 U.S. at 556).

When the non-conclusory facts alleged by plaintiff
Falcon are examined, with the *prima facie* elements as the backdrop,
the Court finds that plaintiff Falcon has stated a plausible claim
of political discrimination.   Accordingly, defendant Casillas'
motion to dismiss plaintiff Falcon's section 1983 claim is **DENIED**.

   **C.   Plaintiff's Fifth Amendment Claim**

Defendant Casillas argues that plaintiff Falcon fails to
state a due process claim pursuant to the Fifth Amendment.  (Docket
No. 13 at p. 12.)   Notwithstanding defendant's argument, the
complaint does not discuss a Fifth Amendment due process claim, but
merely includes the Fifth Amendment in a list of Amendments that
are claimed to be violated by actions limiting plaintiff's rights
of speech, expression, association, and belief.  (Docket No. 1 at
p. 2.)  Plaintiff Falcon, however, fails to provide any explanation
as to how her Fifth Amendment rights were violated.  "Judges are
not mind-readers, so parties must spell out their issues clearly,

highlighting the relevant facts and analyzing on-point authority."
Rodriguez v. Municipality of San Juan, 659 F.3d 168, 175 (1st Cir.
2011).  A party may not merely "mention a possible argument in the
most skeletal way, leaving the court to do counsel's work, create
the ossature for the argument, and put flesh on its bones." United
States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  Accordingly,
the Court finds that plaintiff Falcon fails to state a Fifth
Amendment claim.

        Additionally, it is well settled that the Fifth Amendment
is inapplicable to causes of action against the Commonwealth of
Puerto Rico and private persons.  See, e.g., Martinez-Rivera v.
Sanchez-Ramos, 498 F.3d 3, 8 (1st Cir. 2007).  Plaintiff Falcon
does not bring suit against the federal government or any federal
actors, and she fails to explain the basis for her Fifth Amendment
claim.  Accordingly, plaintiff Falcon's Fifth Amendment claims are
**DISMISSED WITH PREJUDICE.**

        **D.    Plaintiff's Equal Protection Claim**

        Defendant Casillas argues that plaintiff Falcon's claim
pursuant to the Equal Protection Clause of the Fourteenth Amendment
must be dismissed because a plaintiff may not "assert parallel
claims under the First Amendment and the Equal Protection Clause
for the same [alleged] discriminatory conduct."  (Docket No. 13 at
p. 13.)

The Equal Protection Clause requires that similarly situated individuals be treated in a similar manner. <u>See</u> <u>Marrero-Gutierrez v. Molina</u>, 491 F.3d 1, 9-10 (1st Cir. 2007) (citing <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432 (1985)). "An equal protection claim alleging political discrimination[, however,] merely restates a First Amendment political discrimination claim and . . . [should be] considered under the First Amendment." <u>Uphoff Figueroa v. Alejandro</u>, 597 F.3d 423, 430 n. 8 (1st Cir. 2010).

Plaintiff Falcon's equal protection claim is based on the same set of facts as her First Amendment political discrimination claim: that defendants allegedly discriminated against her because of her PDP membership. (<u>See</u> Docket No. 1 at p. 2.) Because plaintiff Falcon's claim pursuant to the Equal Protection Clause merely reiterates her First Amendment political discrimination claim, therefore, plaintiff Falcon's equal protection claim is **DISMISSED WITH PREJUDICE.**

### E.   Plaintiff's Claims Against All Other Defendants

Plaintiff Falcon also brings claims against defendant Casillas' wife and the conjugal legal partnership composed by them; defendant Castro's husband and the conjugal legal partnership composed by them; and defendant PRPA. (Docket No. 1 at pp. 4-6.) Defendant Casillas, however, is the only party who filed a motion

to dismiss.[15]  (Docket No. 13.)   Nevertheless, the Court finds *sua sponte* that plaintiff Falcon's Fifth Amendment and Equal Protection claims against the remaining defendants fail for the same reasons as those claims brought against defendant Casillas.  As discussed previously, plaintiff Falcon fails to state a Fifth Amendment claim and her Equal Protection claim merely restates her First Amendment claim.  Accordingly, the Court **DISMISSES WITH PREJUDICE** plaintiff Falcon's Fifth Amendment and Fourteenth Amendment actions against all defendants.

### F.   Plaintiff's Supplemental Puerto Rico Law Claims

When a district court has original jurisdiction over a claim, the court also has supplemental jurisdiction over state law claims that form part of the same case or controversy.  28 U.S.C. § 1367(a).  Because plaintiff Falcon's section 1983 claim remains, the Court may exercise supplemental jurisdiction over state law claims that "derive from a common nucleus of operative fact."  Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  A court should consider "the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving [supplemental] state law claims."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).  In light of these factors, as well as plaintiff Falcon's

---

[15] Defendant PRPA did file an answer to the complaint, however, where it outlined affirmative defenses and requested that the Court "dismiss the complaint."  (Docket No. 14 at pp. 9-10.)

Civil No. 12-1892 (FAB)                                              23

remaining section 1983 claim to ground jurisdiction, the Court will exercise its supplemental jurisdiction over plaintiff Falcon's Puerto Rico law claims. Accordingly, defendant's motion to dismiss plaintiff Falcon's Puerto Rico law claims is **DENIED**.

## IV. CONCLUSION

For the reasons expressed above, the Court **GRANTS in part and DENIES in part** defendant Casillas' motion to dismiss. The motion to dismiss plaintiff Falcon's Fifth Amendment and Equal Protection claims is **GRANTED** as to all defendants. Those claims, accordingly, are **DISMISSED WITH PREJUDICE.** The motion to dismiss plaintiff Falcon's First Amendment political discrimination claim and her Puerto Rico law claims against all defendants is **DENIED.**

**IT IS SO ORDERED.**

San Juan, Puerto Rico, June 28, 2013.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              UNITED STATES DISTRICT JUDGE