IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LINNETTE FALCÓN CUEVAS,

       Plaintiff,

       v.

PUERTO RICO PORTS AUTHORITY, et al.,

       Defendants.

CIVIL NO.: 12-1892 (MEL)

## OPINION AND ORDER

### I.   PROCEDURAL HISTORY

On October 24, 2012 Linnette Falcón Cuevas ("plaintiff" or "Falcón") filed a complaint pursuant to 42 U.S.C. §§ 1983, 1988 against the Puerto Rico Ports Authority ("PRPA" or the "Authority"), Gilberto Casillas Esquilín ("Casillas") in his individual and official capacity, and Ivelisse Castro Guzmán ("Castro") in her individual and official capacity, alleging discrimination on the basis of her political affiliation, in violation of the First Amendment, Fifth Amendment, and the Fourteenth Amendment to the United States Constitution and supplemental claims pursuant the Constitution of the Commonwealth of Puerto Rico and Puerto Rico Law 100 of 1959 ("Law 100"), as amended by P.R. Laws Ann. tit. 29, § 146, *et seq*. and Law 115 of 1991 ("Law 115"), P.R. Laws Ann tit 11, § 1, *et seq*.  ECF No. 1.  On January 14, 2013, Casillas filed a motion to dismiss in his individual capacity pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 13. The court granted in part and denied in part said motion, dismissing plaintiff's Fifth Amendment and Fourteenth Amendment claims against all defendants, and denying the motion to dismiss in part with respect to Falcón's First Amendment political

discrimination claim[1] and denying it with respect her supplemental Puerto Rico law claims. ECF No. 19. On June 27, 2013 plaintiff was ordered to show cause as to why her claims against Castro should not be dismissed for failure to serve process on her within 120 days after the complaint was filed. ECF No. 18. On July 8, 2013, the court dismissed plaintiff's claims against Castro without prejudice. ECF No. 22. On April 3, 2014, Casillas[2] and PRPA (collectively "defendants") filed a joint motion for summary judgment and on April 29, 2014 plaintiff filed a response in opposition. ECF Nos. 30; 52. For the reasons set forth below, defendants' motion for summary judgment is granted in part and denied in part.

## II.   UNCONTESTED FACTS[3]

In February 2004, plaintiff acquired a trust position at the Authority as a Special Aide for former Executive Director under the Popular Democratic Party ("PDP") Administration. ECF No. 52-2, ¶ 1. Plaintiff is affiliated with and has worked closely with the PDP in political activities and fundraising activities, many of which were held at her home. Id. She has helped organize fundraising activities for Governor García Padilla and Governor Acevedo Víla. Id. She knows the governor personally and he has been at her house for political activities. Id. She has been a poll watcher. Id. In 2012 plaintiff obtained a Master's Degree in Human Resources ("HR") from the Ana G. Méndez University. ECF No. 52-2, ¶ 4. Plaintiff currently holds a career

---

[1] The court dismissed allegations regarding a denial of "study leave" that occurred around March 11, 2011, on statute of limitations grounds. It denied defendants' motion to dismiss with regard to plaintiff's allegations that Casillas deprived her of tasks that belonged to her position and that plaintiff was denied the Head Assistant of Purchasing and Auctions position at the Authority. See ECF No. 19.

[2] Counsel for PRPA has clarified that he does not represent Casillas in his official capacity as Director of HR at PRPA, as Casillas no longer holds the position, but he does represent the individual currently in that position, in his or her official capacity. ECF No. 67; see Fed. R. Civ. Pro. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

[3] Defendants did not file a response to plaintiff's proposed uncontested facts. Accordingly, facts proposed by plaintiff that are supported by evidence in the summary judgment record have been deemed admitted and incorporated into the uncontested facts section of this opinion. See Local Rule 56(e) ("Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted.").

position as a Special Aide for the HR Office at the PRPA, but as of the date defendants moved for summary judgment plaintiff was on unpaid leave from the PRPA while occupying the position of Vice President of HR and Industrial Relations in Administration at the Metropolitan Bus Authority. ECF Nos. 30-1, ¶¶ 1, 2; 52-1, ¶¶ 1, 2.

Casillas has been a New Progressive Party ("NPP") "follower" since childhood. ECF No. 52-2, ¶ 46. Casillas occupied the position of Director of HR at PRPA for four months, from April 2012 until July or August 2012.[4] ECF Nos. 30-1, ¶¶ 3, 5, 28; 52-1, ¶¶ 3, 5, 28. After his term as Director of HR at PRPA, Casillas went to occupy the position of Deputy Executive Director of Administration; from September 2012 onwards Casillas was not plaintiff's direct supervisor. ECF Nos. 30-1, ¶¶ 5, 29; 52-1, ¶¶ 5, 29.

When Casillas had entered the Authority as Director of HR he had been away from the HR field for many years and did not have a mastery over the agency's technical areas. ECF Nos. 30-1, ¶ 38; 52-1, ¶ 38; 52-2, ¶ 9. When Casillas was the Director of HR, his supervisor was Ivelisse Castro ("Castro"), who then occupied the position of Deputy Executive Director of Administration. ECF Nos. 30-1, ¶ 30; 52-1, ¶ 30. In conversations that Casillas had with Castro, he told her that he was worried about the task, and that he wanted the job to be "perfect and trustworthy." ECF Nos. 30-1, ¶ 39; 52-1, ¶ 39. Castro told him that he had numerous technical personnel in the department who are competent, "know what they have on their hands," and whose work was "trustworthy and good." Id.

Janet Vega ("Vega") has the career position of Specialist of HR at the Authority. ECF Nos. 30-1, ¶ 32; 52-1, ¶ 30. She was occupying the position of interim Director of HR when

---

[4] There is inconsistency in the proposed uncontested facts with regard to whether Casillas held the position until July 2012 or August 2012. Defendants propose as uncontested facts both that "Gilberto Casillas occupied the position of Director of Human Resources from April 2012 until August 2012" and "Gilberto Casillas was the Director of Human Resources in the Puerto Rico Ports Authority from April until July 2012, for four months." ECF No. 30-1, ¶¶ 3, 28. Plaintiff admits both these facts, without qualification. ECF No. 52-1, ¶¶ 3, 28.

Casillas arrived at PRPA to assume the Director of HR position. Id. Vega directed the classification, retribution, recruitment, and selection division at the PRPA; she is a specialist in classification. ECF Nos. 30-1, ¶ 37; 52-1, ¶ 37; 52-2, ¶ 9. Vega had numerous "technical duties" in her position at the PRPA, which she had not abandoned while she was interim Director of HR. ECF Nos. 30-1, ¶ 39; 52-1, ¶  39. Casillas asked Vega to help him with his new duties as Director of HR, and she agreed. ECF No. 52-2, ¶ 9.

Approximately fifteen years prior to becoming Director of HR at PRPA, Casillas worked for plaintiff's former husband, Hiram Cerezo-Suárez ("Cerezo-Suárez"), who had been the Commissioner of Municipal Affairs for Ex-Governor Rosselló in 1993-1994. ECF Nos. 30-1, ¶ 11; 52-1, ¶ 11. Casillas had met plaintiff while working for Cerezo-Suárez. ECF Nos. 30-1, ¶ 42; 52-1, ¶ 42.When Casillas saw plaintiff in his office he was happy to see her because he knew how she worked and that she was very responsible. ECF Nos. 30-1, ¶ 12; 52-1, ¶ 12. Casillas met with the plaintiff and told her that he was counting on her to be his aide. ECF Nos. 30-1, ¶ 41; 52-1, ¶ 41.

While Casillas was acting as Director of HR, plaintiff was concerned that she was not being assigned duties in accordance with her position. She attempted to resolve the matter by talking to Casillas, and Casillas requested that plaintiff write him a letter with her complaints. ECF Nos. 30-1, ¶¶ 14, 15; 52-1, ¶¶ 14, 15; 52-2, ¶ 47. On June 15, 2012, Falcón wrote a letter to Casillas expressing her concern that she was not being assigned duties in accordance with her position. ECF No. 52-2, ¶ 52; ECF No. 57-6. On August 13, 2013, an attorney wrote a letter to the Executive Director of PRPA, Bernardo Vázquez ("Vázquez") on plaintiff's behalf, informing Vázquez of the letter Falcón sent to Casillas, at Casilla's request, and that Casillas had not met with plaintiff to discuss the contents of the letter or responded to the letter in writing. ECF No.

52-2, ¶ 52; ECF No. 57-7. Plaintiff spoke with Vázquez about "the situation," informing him that since Casillas has assumed the role of Director of HR he had not given her any work. Id. ¶ 51; ECF No. 52-9, at 32. Vázquez told plaintiff that he would try to resolve the situation the same day, but she did not get assigned any work as a result of the conversation. Id.

In June 2012, plaintiff applied for the position of Head Assistant of Purchasing and Auctions.[5] ECF Nos. 30-1, ¶ 9; 52-1, ¶ 9. The position would have resulted in a higher salary for plaintiff. ECF No. ECF No. 52-9, ¶ 26. Casillas was presented with a list of persons that had been determined to be qualified for the position. ECF Nos. 30-1, ¶ 47; 52-1, ¶ 47. On July 13, 2012, plaintiff received a letter signed by Vega indicating that plaintiff did not qualify for the Head Assistant of Purchasing and Auctions position. ECF Nos. 30-1, ¶ 16; 52-1, ¶ 16. Plaintiff requested a review with Mayra Montañez ("Montañez"), the HR specialist that evaluated her application. Id. Montañez informed plaintiff that she did not meet the experience requirements for the position. ECF Nos. 30-1, ¶ 17; 52-1, ¶ 17. Montañez explained that she could not consider the full span of plaintiff's experience, but only half the time as experience. ECF Nos. 30-1, ¶ 18; 52-1, ¶ 18. A consideration of half the time as experience would have filled the experience requirement for the position. ECF Nos. 30-1, ¶¶ 18, 19; 52-1, ¶¶ 18, 19.

On July 24, 2012, plaintiff received a letter from Casillas reaffirming that she did not qualify for the position. ECF Nos. 30-1, ¶ 20; 52-1, ¶ 20. When the plaintiff received the letter, she asked Casillas for a meeting to discuss her complaint regarding the experience not being credited to the job posting. ECF Nos. 30-1, ¶ 21; 52-1, ¶ 21. Casillas told plaintiff that he would look at the matter calmly, evaluate it, and "consult to learn about it." ECF Nos. 30-1, ¶ 53; 52-1, ¶ 53. He informed her that he would meet with her after meeting with the legal adviser at the

---

[5] Plaintiff indicated that the position was a career position in her deposition transcript. ECF No. 52-9, at 15. None of the parties, however, have proposed that information as an uncontested fact.

time, Eric Rolón ("Rolón"). Id. Casillas consulted with Rolón about the issue.  ECF Nos. 30-1, ¶ 54; 52-1, ¶ 54. After the consultation, they concluded that the fact that plaintiff had been a member of the bid board for four years meant "that she had to have learned something even though she did not have the proper duties of a purchaser." Id. They applied her some points for the experience, and plaintiff was eligible for the position. Id.

On August 2, 2012, plaintiff received a letter from Casillas stating that she had been included in the eligible register for the Head Assistant of Purchasing and Auctions position and was provided with a date for an interview. ECF Nos. 30-1, ¶¶ 23, 54; 52-1, ¶¶ 23, 54. Plaintiff was interviewed for the position by a panel composed by Counsel Rolón, Casillas, and María Isabel Sierra. ECF Nos. 30-1, ¶ 24; 52-1, ¶ 24. Technicians from the "recruitment area" provided the panel with documents containing a point system; the applicants points were calculated, the technicians tabulated the results, and presented the results to Casillas. ECF Nos. 30-1, ¶ 56; 52-1, ¶ 56. Then, a letter containing the calculations was sent to the Executive Director for him to make a determination as to which person he wished to recruit for the position. Id. It is the Executive Director's "prerogative to determine which person he wanted to recruit for the position." Id. The Executive Director selected Castro from the list of persons qualified for the Head Assistant of Purchasing and Auctions position.[6] ECF Nos. 30-1, ¶ 48; 52-1, ¶ 48. Castro handed rejections letters to the other candidates for the position. ECF No. 52-2, ¶ 33.

### III.   LEGAL STANDARD

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ.

---

[6] As plaintiff points out, Castro was Casillas's boss at the time that he interviewed plaintiff for the position that Castro ultimately attained. See ECF No. 52-2, ¶ 29. The citations made by the parties to the record do not specifically evince whether Casillas interviewed Castro as well, and fail to shed light on the awkwardness of a subordinate interviewing a candidate for a position for which his superior is also competing.

Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). The plaintiff need not, however, "rely on *uncontradicted* evidence . . . . So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable

inferences in that party's favor." <u>Griggs-Ryan</u>, 904 F.2d at 115 (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood . . . ." <u>Greenburg v. P. R. Mar. Shipping Auth.</u>, 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## IV. LEGAL ANALYSIS

### A. Eleventh Amendment Sovereign Immunity

"[I]n the absence of consent[,] a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 100 (1984); <u>see also</u> <u>Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority</u>, 991 F.2d 935, 938 (1st Cir.1993); <u>and</u> <u>Ramírez v. P.R. Fire Serv.</u>, 715 F.2d 694, 697 (1st Cir. 1983). For purposes of Eleventh Amendment immunity analysis, the Commonwealth of Puerto Rico is treated as a state. <u>See</u> <u>Redondo Constr. Corp. v. P.R. Highway & Transp. Auth.</u>, 357 F.3d 124, 125 n. 1 (1st Cir.2004); <u>Ramírez v. P.R. Fire Serv.</u>, 715 F.2d 694, 697 (1st Cir.1983) ("Puerto Rico, despite the lack of formal statehood, enjoys the shelter of the Eleventh Amendment in all respects"). Eleventh Amendment immunity extends to lawsuits against "an arm of the state" and to state employees exercising their official duties. <u>See e.g.</u>, <u>Regents of the Univ. of Cal. v. Doe</u>, 519 U.S. 425, 429 (1997); <u>Hess v. Port Auth. Trans-Hudson Corp.</u>, 513 U.S. 30, 32-24 (1994). "Whether an entity may be considered an 'arm of that state' for purposes of Eleventh Amendment immunity is a question of federal law that requires the application of a two-part test annunciated by the Supreme Court in [<u>Hess</u>], and adopted by the

First Circuit in <u>Fresenius Med. Care v. Puerto Rico and the Caribbean Cardiovascular Ctr. Corp.</u>, 322 F.3d 56 (1st Cir. 2003)." <u>Izarry-Mora v. Univ. of P.R.</u>, Civ. No. 08-2004 (ADC), 2009 WL 9041224, at *2 (D.P.R. Aug. 24, 2009) (finding that the University of Puerto Rico is an arm of the Commonwealth that shares its sovereign immunity). Under this test, the court must "first determine whether the state has indicated an intention—either explicitly by statute or implicitly through the structure of the entity—that the entity share the state's sovereign immunity." <u>Redondo Const. Corp. v. P.R. Highway and Transp. Auth.</u>, 357 F.3d 124, 126 (1st Cir. 2004) (citing <u>Fresenius</u>, 322 F.3d at 68-72). Relevant factors may include: the enabling statute establishing the entity, other statutes related to the entity, state court decisions defining the character of the entity, the entity's functions, and the degree to which the state exercises control over the entity. <u>See</u> <u>Hess</u>, 513 U.S. at 68-72. If this first prong does not conclusively demonstrate that the entity is an arm of the state, the court then inquires "whether the state's treasury would be at risk in the event of an adverse judgment." <u>Id.</u> at 72.

Defendants assert that PRPA is entitled to sovereign immunity pursuant to the Eleventh Amendment, citing to <u>P.R. Ports Auth. v. Federal Maritime Com'n</u>, 531 F.3d 868 (D.C. Cir. 2008) and <u>Orocovis Petrolem Corp. v. P.R. Ports Auth.</u>,  Civ. No. 08-2359 (GAG), 2010 WL 3981665 (D.P.R. Oct. 5, 2010), which hold that the Authority is an arm of the state. ECF No. 30, at 11. Plaintiff responds that the court should follow the Court of Appeals for the First Circuit's decision in <u>Royal Caribbean Corp. v. P.R. Ports Auth.</u>, 973 F.2d 8 (1st Cir. 1992), in which it found that PRPA was not entitled to sovereign immunity. ECF No. 52, at 26. Although <u>Royal Caribbean Corp.</u> is the most recent First Circuit Court of Appeals decision to decide the discrete issue of whether PRPA is entitled to sovereign immunity, it is not controlling in this case as the

standard for determining whether an entity is an arm of the state has changed since it was

decided. As stated by the court in Orocovis Petrolem Corp.:

> [T]he court finds that Fresenius Medical Care Cardiovascular
> Resources, Inc. v. Puerto Rico governs the question of sovereign
> immunity for PRPA. See 322 F.3d 56 (1st Cir. 2003). Before
> Fresenius, the First Circuit employed a multi-factor test to
> determine the applicability of Eleventh Amendment immunity to
> public corporations like PRPA as an 'arm of the state.' See Metcalf
> & Eddy, Inc. v. P.R. Aqueduct & Sewer Auth., 991 F.2d 935, 939-
> 40 (1st Cir. 1993). Under that test, PRPA's sovereign immunity
> varied from case to case, depending on the entity's function at
> issue in the case. See id. at 941 n.6 (citing P.R. Ports Auth. v. M/V
> Manhattan Prince, 897 F.2d 1, 12 (1st Cir. 1990); [Royal Caribbean
> Corp., 973 F.2d at 8]. Where the case involved a traditionally
> governmental rather than proprietary function, the test weighed in
> favor of immunity. See id.
>
> In Fresenius, the First Circuit updated the test in light of the
> decisions by the U.S. Supreme Court. See 322 F.3d at 68 (citing,
> inter alia, [Hess, 513 U.S. at 30]). The court held that the Eleventh
> Amendment protected both the 'state's dignitary interest' in
> conferring its immunity on certain entities and the state's interest in
> shielding its purse. Id. at 65. Under this revised model, a federal
> court first applies a multi-factor test to examine whether 'the state
> has clearly structured the entity to share its sovereignty." Id. at
> 68. . . .

2010 WL 3981665, at *1.

In deciding Fed. Maritime Comm'n, the Court of Appeals for the District of Columbia

applied the principles articulated in Hess and Fresenius, reaching the conclusion that PRPA is an

arm of the state. 531 F.3d at 874 ("We thus read Hess in much the same way as did Judge

Lynch's thorough First Circuit opinion in [Fresenius]."). As explained in Orocovis Petrolem

Corp.:

> Citing Fresenius, the sister circuit examined the legislative intent
> of PRPA's enabling statutes; the Commonwealth's direct control
> over PRPA through the composition of the governing board; and
> the vulnerability of the Commonwealth fisc to liabilities arising
> from PRPA's operations. See id. at 874-80.

2010 WL 3981665, at *1. The District of Columbia Circuit's "comprehensive discussion" in Fed. Maritime Comm'n is persuasive in the case of caption. Id. at *2 (citing Fed. Maritime Comm'n, 531 F.3d at 874-81). As it points out, the language from the Authority's enabling act "describes PRPA as a 'governmental instrumentality of the Commonwealth of Puerto Rico' and 'governmental controlled corporation.'" Fed. Maritime Comm'n, 531 F.3d at 875 (citing P.R. Laws Ann. tit 12, § 333(a), (b)). The enabling act and Puerto Rico's Dock and Harbor Act indicate that the Authority "performs its functions to promote 'the general welfare' and to increase 'commerce and prosperity' for the benefit 'of the people of Puerto Rico.'" Id. (citing P.R. Laws Ann. tit 12, §§ 348(b), 2109, 2202). Furthermore, "[l]ike other Commonwealth agencies, PRPA does not have private owners or shareholders and does not pay taxes; instead, it must submit a yearly financial statement to the legislature and Governor, and its books are examined periodically by the Controller [*sic*] of Puerto Rico." Id. at 876 (citing P.R. Laws Ann. tit. 12, §§ 338, 348, 345). Each of these considerations "points in the direction of arm-of-the-Commonwealth status" with respect to the Commonwealth's intent to share its sovereignty with the Authority. Id. Moreover, the Commonwealth exercises considerable control over PRPA, as the Governor of Puerto Rico "controls the appointment of the entire Board" and "has the power to remove *at will* four of the five members of PRPA's Board of Directors from their government offices." Id. at 877 (citing P.R. Laws Ann. tit 23, § 334). The Board of Directors in turn appoints PRPA's chief executive officer, the Executive Director. P.R. Laws Ann. tit 23, § 335. "And there is still more indicating Commonwealth control of PRPA: The Puerto Rico Attorney General has previously opined that the Governor of Puerto Rico retains control of Puerto Rico's public corporations." Fed. Maritime Comm'n, 531 F.3d at 875 (citing 1992 Op. Atty. Gen. P.R. 103 (Sept. 21, 1992)).

Although the analysis above "ends the inquiry under First Circuit precedent" as the pertinent considerations each suggest that PRPA is an arm of the state, "the D.C. Circuit went a step further and found that the second prong also militates in favor of immunity . . . ." <u>Orocovis Petrolem Corp.</u>, 2010 WL 3981665, at *2 (<u>Fed. Maritime Comm'n</u>, 531 F.3d at 878-80). "The Dock and Harbor Act makes the Commonwealth directly liable for certain torts committed by PRPA's officers, employees, or agents when they are acting in their official capacity and within the scope of their function, employment or agency relationship." <u>Fed. Maritime Comm'n</u>, 531 F.3d at 879 (citing P.R. Laws Ann. tit 23, § 2303). However, regardless of whether the Commonwealth's treasury would be jeopardized in the event of an adverse judgment in this case, under the standard established in <u>Fresenius</u>, PRPA and Casillas, in his official capacity, are covered by sovereign immunity. Therefore, plaintiff's claims for monetary damages against the Authority and Casillas, in his official capacity, are dismissed with prejudice.[7]

### B.     First Amendment Political Discrimination

Section 1983 provides a cause of action against state actors acting under the color of law who deprive a citizen of rights, privileges, or immunities secured by the Constitution and laws. 42 U.S.C. § 1983.  A claim under § 1983 requires three elements for liability: (1) state action; (2) deprivation of a right; and (3) a causal connection between the defendant's alleged conduct and

---

[7] Plaintiff's claims against the Director of HR in his or her official capacity for prospective injunctive relief are not barred by Eleventh Amendment immunity. <u>See</u> <u>García-Hicks v. Vocational Rehabilitation Admin.</u>, Civ. No. 13-1491 (FAB), 2014 WL 2611183, at *5 (D.P.R. June 11, 2014) ("[W]hile the Eleventh Amendment shields state officers from actions for money damages when those suits target the officers in their official capacities, it does not preclude official capacity suits seeking injunctive relief.") (citing <u>Bd. of Trustees of the Univ. of Ala v. Garrett</u>, 531 U.S. 356, 363 (2001); <u>Ex parte Young</u>, 209 U.S. 123 (1908)). Plaintiff requests two forms of injunctive relief in the complaint: an order to PRPA and the Director of HR "to reinstate her to her respective duties inherent to her position with all the benefits she would have been entitled to" and, [i]n the alternative, to be appointed as Head Assistant of Purchasing and Auctions." ECF No. 1, at 20. With respect to the prayer for relief to reinstate her to the duties associated with her career position as a Special Aide to the Office of HR, counsel for plaintiff shall clarify at the Pretrial and Settlement Conference whether plaintiff persists in requesting such relief, in light of plaintiff's current employment in a trust position at the Metropolitan Bus Authority. As to the request to be appointed as Head Assistant of Purchasing and Auctions, the same is moot in light of the decision contained within this opinion that the claims related to her failure to attain the position are dismissed.

the deprivation. <u>Gutiérrez–Rodríguez v. Cartagena</u>, 882 F.2d 553, 558 (1st Cir. 1989).  A plaintiff must demonstrate that each defendant was personally and directly involved in the deprivation of his federally protected rights and that the defendant's conduct was the cause in fact of the alleged deprivation. <u>See</u> <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 306 (1st Cir. 2008) (citing <u>Rodríguez-Cirilo v. García</u>, 513 F.3d 301, 306 (1st Cir. 2007)); <u>Gutiérrez–Rodríguez</u>, 882 F.2d at 559; <u>Medina Pérez v. Fajardo</u>, 257 F.Supp.2d 467, 473 (D.P.R. 2003) (citing <u>Caraballo Cordero v. Banco Financiero De Puerto Rico</u>, 91 F.Supp.2d 484, 489 (D.P.R. 2000)).

The First Amendment to the United States Constitution embodies the right to be free from political discrimination. <u>Barry v. Moran</u>, 661 F.3d 696, 699 (1st Cir. 2011). The First Circuit Court of Appeals has held that that right prohibits government officials from "taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." <u>Ocasio–Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 11 (1st Cir. 2011) (internal citations omitted). A *prima facie* case of political discrimination based on the First Amendment consists of four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." <u>Lamboy–Ortíz v. Ortíz–Vélez</u>, 630 F.3d 228, 239 (1st Cir. 2010). "Once made, the defendant may then rebut that showing with what is commonly referred to as the <u>Mt. Healthy</u> defense: by proving by a preponderance of the evidence that the governmental agency would have taken the same action," regardless of plaintiff's political affiliation. <u>Reyes-Pérez v. State Ins. Fund Corp.</u>, 755 F.3d 49, 54 (1st Cir. 2014) (citing <u>Díaz-Bigio v. Santini</u>, 652 F.3d 45, 52 (1st Cir. 2011).

## 1.   *Prima Facie* Case

In the case of caption, it is uncontested that plaintiff and Casillas have opposing political affiliations and defendants concede that Casillas knew plaintiff's political affiliation. ECF No. 30. In arguing that plaintiff has not met her burden of establishing a *prima facie* case of political discrimination, defendants state: "What the plaintiff has failed to show is any ill motivation by defendant Gilberto Casillas towards her, in order to show that he has politically discriminated against her. Furthermore, plaintiff has failed to establish any adverse employment action taken by Gilberto Casillas against her . . . ." ECF No. 30, at 18. Plaintiff argues that she suffered two adverse employment actions motivated by discriminatory animus: the deprivation of her duties as Special Aide to the Office of HR and failure to promote her to the Head Assistant of Purchasing and Auctions position. ECF No. 52, at 2-3.

### a.   Deprivation of Duties as Special Aide to the Office of HR

Actions short of dismissal or demotion can constitute adverse employment actions for the purposes of a political discrimination claim. Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 766 (1st Cir. 2010) (citations omitted). "Employment actions are sufficiently adverse to support a First Amendment § 1983 claim if those actions, objectively evaluated, would place substantial pressure on even one of thick skin to conform to the prevailing political view." Id. (citing Bergeron v. Cabral, 560 F.3d 1, 8 (1st Cir. 2009) (internal quotations omitted). This standard is satisfied where "the employer's challenged actions result in a work situation 'unreasonably inferior' to the norm for the position." Agosto–de–Feliciano v. Aponte–Roque, 889 F.2d 1209, 1218 (1st Cir.1989) (en banc) (explaining that the factfinder must "canvass the specific ways in which the plaintiff's job has changed" and "determine whether the employee has retained duties, perquisites and a working environment appropriate for his or her Rank and title.").

With regard to the duties plaintiff was assigned while Casillas held the position of Director of HR, Vega indicates that plaintiff was not being assigned work, stating:

> A: But I used to tell [Castro] all the time: 'Look, you have to assign work to [plaintiff]. Because she can't be doing nothing. It weirded me out.
>
> Q: When you say that it 'weirded you out', what did you feel? How can you describe it?
>
> A: It's because I know she is a responsible and professional person, and she also felt bad because she was not being assigned work.
> . . .
>
> Q: So you complained to Casillas as well . . .
>
> A: Mm-hm.
>
> Q: . . . and to [Castro].
>
> A: Yes. I used to tell [Castro]: 'Ivelisse, give her work. Give her work.'
>
> Q: And to Casillas as well.
>
> A: Yes.

ECF No. 57-1, at 18, ll. 23-25, 19, ll. 1-20. Vega adds that when she was serving as interim Director of HR, prior to Casillas assuming the position and while he "took some weeks off," Vega "would assign [plaintiff] work, you know, work that she was supposed to do." Id. at 20, ll. 20-25, 21, ll. 1-7. As to the withdrawal of her duties, plaintiff's deposition testimony states:

> Q: Okay, you claim in your complaint that you were unduly withdrawn some duties. What were those duties that you were withdrawn? The whole duties, the entire role of duties. What did you do in that time?
>
> A: . . . So when Mr. Casillas came as Human Resources director, the only thing that I had left was a drug procedure, drug protocol, to make current a drug and alcohol protocol. . . . And the day to day of the office. For example documents that were generated inside the Human Resources offices that would go through me to

proofread before going up. When Mr. Casillas was named director of the office all my job duties were halted.

Q: Who performed those duties?

A: Ms. Janet Vega.

. . .

Q: So your testimony is that other than reviewing and updating the protocol for drugs and alcohol and reviewing the day to day documentation that arrives to the office of Human Resources you did nothing else from April 2012 until August 2012, when Casillas was the Human Resources director[?]

A: Yes.

ECF No. 32-1, at 8, ll. 1-25, 9, ll. 1-6.

Plaintiff's job description as Special Aide to the Office of HR states that the position's "nature of work" is to "[c]oordinate and carry out administrative support duties regarding different activities of a work unit, *as delegated by the Director of [HR]*." ECF No. 59-1, at 1 (emphasis added). In accordance with the organizational chart, plaintiff's position is above the technical personnel in the HR department and directly assists and responds to the Director of HR. ECF No. 52-2, ¶ 7. The job description lists the position's "essential duties" as to: "Organize, coordinate and supervise special projects, services or programs assigned to him or her and inform the Director as to these"; "Coordinate and collaborate in the supervision of administrative, fiscal and technical activities of the Office"; "Prepare reports of state and federal agencies that require [HR] information"; "Collaborate with the Director in coordinating and maintaining a record of all complaints received and ensure that the established terms are complied with. Ensure that all the documents certified by the divisions are complete in order to refer to the legal assistant"; "Analyze the organizational behavior of the office and offer recommendations to the Director of [HR] in order to improve efficiency and productivity of the

[HR] Section and Division"; "Participate in committees, work teams, and substitute and represent the Supervisors of [HR] Managers when required by the Director in activities and meetings"; "Prepare, implement, and follow up on work plans of the special projects or programs assigned among others"; "Investigate, study, analyze, and make recommendations as to administration aspects in the [HR] Office"; "Serve as a liaison between the clients of the [HR] Office and employees of the Authority and the Director of the Office"; "Participate and collaborate in planning, managing and carrying out studies and technical and specialized assignments related to the assigned tasks and issues"; "Participate in the preparation, revision, and analysis of procedures, rules, among other matters related to activities and projects of which he or she is in charge, and issue suggestions"; "Collaborate in the supervision of administrative and technical personnel linked to the program, project, or activity expressly assigned by the Director of Human Resources"; "Keep the Director informed through verbal and written reports related to the operation of special projects or programs that are expressly assigned"; "Represent the Director in meeting and other activities expressly assigned by him or her"; and "Draft letters, memoranda, reports and other documents for the Director's signature." Id. at 1-2. In light of this extensive list of "essential duties" for the plaintiff's position, the explicit indication in her job description that her duties should be carried out as delegated by the Director of HR, and plaintiff's testimony that she did nothing else but review and update the drugs and alcohol protocol and review day to day documentation that arrives in the office, a rational factfinder could determine that plaintiff experienced "a work situation 'unreasonably inferior' to the norm for the position" due to Casillas's failure to assign her duties associated with her position while he was employed as Director of HR. Therefore, she has met her burden at the summary judgment

of establishing she suffered an adverse employment action in the form of removal or withdrawal of her duties.

With respect to whether plaintiff's political affiliation was a substantial or motivating factor behind this adverse employment action, plaintiff cites to another portion of her deposition transcript, in which she describes a meeting[8] she had with Casillas during which she attempted to explain to him the differences between her role as a Special Aide and Vega's role as a specialist of Human Resources. ECF No. 52-9, at 16. Plaintiff states in the deposition that during the meeting Casillas was "very nervous" and that he "state[d] to [her]: 'Linnette, I am so sorry, because you know that I know your grandfather, I know you [sic] since you were a kid, but Ivelisse Castro instruct [sic] me that I can't give you any work'." Id. at 17, ll. 1-4. According to Falcón's deposition, Casillas then had to take a phone call: "He answered a phone call and I heard him speak to whoever was in [sic] the other line, saying that he interviewed her husband and he was a very nice candidate, but the instructions were to help their people from inside the office, from inside the agency and then look for something for the outsiders." Id. at 17, ll. 13-18. She asserts that once Casillas hung up the phone she asked him: "When you say your people, which people you're saying [sic]?" Id. at l. 20. Falcón continues, "[H]e said: 'Linnette please don't ask this question, you know better than that'. And I asked him: 'Are you saying that the reason why I'm not having work is because I am not part of this administration?' And he said yes with his head . . . ." Id. at ll. 20-24.

---

[8] The uncontested facts proposed by the parties do not establish the date this meeting occurred. A review of plaintiff's deposition testimony reveals that the portions that plaintiff has submitted to the court also do not indicate the date of this meeting. The complaint alleges that "[o]n May 14, 2012, Plaintiff and Mr. Casillas met at his office to discuss Plaintiff's lack of assigned tasks. As soon as the meeting began, Mr. Casillas apologized because he needed to answer a call on his cell phone. In that conversation Mr. Casillas stated to the caller that he interviewed the husband of that person who seemed like a good candidate, but the instructions were, that 'we have the need to accommodate our people within the Agency first that then I will seek other alternatives to accommodate the rest of our people before the elections.'" ECF No. 1, ¶ 48.

In addition to her own deposition testimony, plaintiff again cites to Vega's deposition, in which Vega recalls that Casillas would make comments regarding getting positions approved for fellow members of the NPP:

> Q: So he wanted to accommodate his people, is that what you are saying.
>
> A: Yes, yes. He used to say that: 'I came here for this . . .'
>
> Q: Stop . . . What did he say?
>
> A: To, you know, to achieve the mission to leave people from his political party accommodated, from the NPP.

ECF No. 57-1, at 31, ll. 4-19. Although this portion of Vega's deposition testimony does not specifically refer to the allegations that Casillas did not assign plaintiff work associated with her duties as Special Aide to the Office of HR, in conjunction with Falcón's own deposition testimony that Casillas admitted the reason she was not being assigned work was because she was not affiliated with the NPP administration, a reasonable factfinder could determine that her political affiliation was a substantial or motivating factor behind his decision whether to assign her tasks associated with her title and role. Although the portion of plaintiff's deposition detailed above suggests that Casillas was following instructions from Castro not to assign work to plaintiff, the requisite causation between the alleged deprivation of plaintiff's right to freedom of association and Casillas's own actions is satisfied. As noted above, plaintiff's job description indicates that her duties were to be delegated by the Director of HR, suggesting that Casillas was responsible for assigning work to plaintiff during the time that he held said position and that his own acts or omissions contributed to the adverse employment action in question. Furthermore, Falcón's testimony suggests that he was aware that the decision not to assign tasks to Falcón was politically driven and the addition of Vega's statement gives rise to an inference that Casillas

was politically zealous himself. Overall, plaintiff has adduced sufficient evidence that she suffered an adverse employment action in the form of reduction or "deprivation" of the duties associated with her position at PRPA and that her political affiliation was a substantial or motivating factor influencing the amount and / or type of work she was assigned. Therefore, plaintiff has met her burden of establishing a *prima facie* case of political discrimination with respect to this claim.

### b.    Competition for the Head of Purchasing and Auctions Position

It is uncontested that Vázquez, the Executive Director at the time that plaintiff applied for the Head of Purchasing and Auctions position, selected Castro for that position. Defendants assert that the fact that Vázquez, who is not a party to this case, made the decision demonstrates that Casillas did not undertake an adverse employment action against plaintiff with regard to this claim. ECF No. 30, at 18-19. Plaintiff responds that "[d]efendants fail to recognize the precise nature and scope of adverse actions when they attempt to dismiss plaintiff's claims by simply pointing out to [*sic*] the fact that she ultimately became part of the list of eligible [*sic*]. What transpired before and after this fact seems to have vanished." ECF No. 52, at 22.

With regard to the events that occurred prior to plaintiff's placement on the list of eligible candidates for the position in question, plaintiff does not offer additional argumentation regarding what precisely constituted an adverse employment action; however, the original decision that she was ineligible and the initial reaffirmation of that determination from Casillas do not rise to the level of an adverse employment action. Plaintiff has not articulated how this determination impacted her then current position as a Special Aide to the Office of HR, nor does the summary judgment record support the theory that she was denied an opportunity to compete for the Head of Purchasing and Auctions position based on the initial determination that she was ineligible. It is uncontested that Casillas met with Rolón regarding plaintiff's qualifications for

the role and plaintiff was placed on the eligible register for the position subsequent to their meeting.

With respect to the events related to plaintiff's application for the Head Assistant of Purchasing and Auctions position that happened after she was placed on the eligible roster, pursuant to § 1983, plaintiff "must 'show that the [defendant's] conduct was the cause in fact of the alleged deprivation." <u>Gagliardi v. Sullivan</u>, 513 F.3d 301, 306 (1st Cir. 2008) (finding plaintiff failed to state a § 1983 claim under the First Amendment where complaint intimated that defendants caused the adverse employment decision, but did not allege sufficient well-pleaded facts to demonstrate that defendants' behavior caused that decision) (citing <u>Rodríguez-Cirilo v. García</u>, 115 F.3d 50, 52 (1st Cir. 1997)). The uncontested facts establish that Casillas was on the panel of individuals that interviewed plaintiff for the position and that the members of the panel used documents containing a point system to evaluate candidates. The summary judgment record also contains evidence that Castro, Casillas's boss at the time who ultimately was awarded the position, instructed Casillas not to give plaintiff any work. It also contains evidence that Casillas stated he came to the Authority with the "mission" of accommodating members of the NPP. Moreover, according to Vega's deposition testimony, Casillas inquired "how are we doing on Ivelisse's position" with regard to the Head Assistant of Purchasing and Bids position, while the position was in the process of being approved by the Office of Management and Budget (translation ours for "Oficina de Gerencia y Presupuesto").[9] ECF No. 57-1, at 30, ll. 21-15. It is uncontested that technicians from the "recruitment area" presented the results of the points awarded by the panelists to Casillas and that a letter containing the calculations was sent to the

---

[9] It is unclear from Vega's deposition whether she personally heard him say this or whether the statement was heard by Sara Gregory, who Vega indicates sat behind her at the Authority and "heard [Casillas] as well." ECF No. 57-1, at 30, ll. 9-10. It is also not entirely clear from the portion of her deposition testimony to which plaintiff cites that Casillas made this statement prior to the interview process and / or decision to award Castro the position.

Executive Director for him to make a determination as to which person he wished to hire for the position.[10] The record also indicates that Castro handed the other candidates their rejection letters for the position, and supports a reasonable inference that Casillas assumed Castro's former position as Deputy Executive Director of Administration after Castro was awarded the Head Assistant of Purchasing and Auctions role. See ECF Nos. 30-1, ¶¶ 29, 30; 52-1, ¶¶ 29, 30.

Acknowledging, as plaintiff asserts, that this combination of facts, taken as true for summary judgment purposes, raises "red flags," the same falls short of demonstrating a causal link between Casillas' actions or omissions and that adverse employment action in question— that is, the failure to promote plaintiff to the Head Assistant of Purchasing and Auctions position. ECF No. 52, at 22. It is uncontested that Vázquez, not Casillas, made the decision to hire Castro instead of plaintiff. The record is silent with regard to what impact, if any, the evaluation that Casillas had a role in compiling had on the Executive Director's decision to hire Castro in favor of plaintiff. Plaintiff has not cited to any evidence as to the contents of the letter sent to Vázquez regarding the calculations of the panel; it is unclear from the record whether Casillas gave plaintiff a positive or negative evaluation, whether Casillas's review of plaintiff was better or worse than his review of Castro, or whether there was a split among the three panelists regarding the points awarded to the candidates for the positions. Plaintiff points out that Casillas asked her "questions about her purchasing experience and thus her qualifications for the position" during the interview and that "[h]e even found odd that she wanted that position after finishing her master's degree." ECF No. 52. These questions and statement he made during the interview, however, do not evince that he caused her not to attain the job.

It uncontested that it is the Executive Director's "prerogative" to decide which candidate to select for the position. Plaintiff has not presented evidence that Vázquez was bound by the

---

[10] It is unclear from the record whether Casillas himself sent this letter to the Executive Director.

points awarded by Casillas or by Casillas's recommendations regarding the interviewees in making his decision regarding which candidate to choose. Overall, the evidence to which the parties have cited does not shed light on why Vázquez made the decision to hire Castro from the eligible roster for the positions. Any inference that Casillas somehow supported or encouraged Vázquez's ultimate decision to select Castro, or that Casillas's acts or omissions otherwise caused Falcón not to be promoted, would be speculative based on the evidence that has been brought to the court's attention regarding this claim.

Plaintiff does not allege in the complaint or otherwise present evidence to suggest that Vázquez's decision to promote Castro to the position instead of Falcón was motivated by discriminatory animus. Furthermore, Vázquez is not a defendant in the case of caption. Plaintiff's allegations focus on the events transpiring during the application process, and the initial determination that she did not qualify for the position, as discussed above. See ECF No. 1, at 14-15. Because this initial determination does not constitute an adverse employment action, in light of the subsequent reconsideration of the determination and because the record does not support a rational inference that Casillas caused plaintiff not to attain the position in question, this claim is dismissed with prejudice, as to all defendants.

### 2.    Mt. Healthy Defense[11]

Defendants raise a Mt. Healthy defense, stating "the evidence will show that the actions taken were not because of plaintiff's alleged political affiliation, but because of the fact that the duties assigned to Janet Vega were those of a Technician and not of the Aid [*sic*] of the Human Resources Director. Also, it has been established that the plaintiff had been assigned work by

---

[11] Based on the dismissal of the failure to promote claim, discussed above, this section applies only to the claim regarding the "deprivation" or withdrawal of plaintiff's duties.

defendant Casillas, including, the review of the Fire Weapons Regulations." ECF No. 30, at 20. In support of their Mt. Healthy defense, defendants cite only to the job description for an HR Specialist (ECF No. 59-2) and that of a Special Aide for the Office of HR (ECF No. 59-1). Id. A review of the uncontested facts does not substantiate the proposition that the duties assigned to Vega were strictly within her job description as a technician or "HR Specialist," or that she was not in fact assigned duties that fell within plaintiff's job description as a Special Aide for the Office of HR. Although the two job descriptions to which defendants cite indeed list different duties, the evidence defendants have brought to the court's attention does not substantiate that only duties associated with Vega's own positions were assigned to Vega during the period of time in which Casillas was Director of HR at the Authority. Moreover, the evidence to which plaintiff has cited suggests Vega was in fact assigned duties associated with plaintiff's job description. With regard to the contention that Casillas assigned plaintiff work, including a review of the firearms regulations, the uncontested facts, as proposed by defendants, establish that "plaintiff reviewed the Regulation of Fire Arms and requested Casillas to know about the status"— defendants do not propose and the record does not establish that Casillas assigned a review of the firearms regulations to her. ECF Nos. 30-1, ¶ 57; 52-1, ¶ 57. Overall, defendants have not shown by a preponderance of evidence that they would have taken the same actions with regard to the distribution of job duties between plaintiff and Vega, regardless of plaintiff's political affiliation.

### C.   Qualified Immunity

"The doctrine of qualified immunity protects defendants in their individual capacities from liability for money damages." Roldan-Plumey v. Cerezo-Suárez, 115 F.3d 58, 66 (1st Cir, 1997). To determine if a public official is entitled to qualified immunity, the court examines: "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that

right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." <u>Mihos v. Swift</u>, 358 F.3d 91, 102 (1st Cir. 2004) (citation omitted). Casillas raises a qualified immunity defense in his individual capacity, stating in a conclusory matter that "[i]n the instant case, the complaint failed to survive the steps of the qualified immunity defense, since the plaintiff failed to establish the violation of her constitutional rights by the appearing defendants. It is clear that the defendants acted within their duties and discretion." ECF No. 30, at 21.

Plaintiff has alleged facts that, if found by a jury to be true, would establish that Casillas violated her First Amendment right to freedom of association by failing to assign her duties associated with her position because of her political affiliation. As to the second prong, "First Circuit precedent has clearly established that reduction in responsibility, when alleged under the auspices of political discrimination, violates the First Amendment. . . ." <u>Davila-Torres v. Feliciano-Torres</u>, 924 F. Supp. 2d 359, 370 (D.P.R. 2013) (citing <u>Torres–Santiago v. Municipality of Adjuntas</u>, 693 F.3d 230, 242 (1st Cir. 2012); Agosto–de–Feliciano, 889 F.2d 1209, 1219 (1st Cir. 1989)). The reason that Casillas altered plaintiff's job duties "is a disputed issue of material fact. Under such circumstances, a grant of qualified immunity is inappropriate." <u>Costa-Urena v. Segarra</u>, 590 F.3d 18, 29 (1st Cir. 2009) (citing <u>Roure v. Hérnandez-Colón</u>, 824 F.2d 139, 141 (1st Cir. 1987)); <u>see also</u> <u>Flores Camilo v. Álvarez Ramírez</u>, 283 F. Supp. 2d 440, 450 (D.P.R. 2003) ("[D]ue to the factual disputes regarding a possible political discriminatory motivation and the circumstances surrounding Defendant's personnel decisions, all of which are vital to this case as a whole and the Court's assessment of the qualified immunity defense in particular, the Court is not in a position to grant Defendant's motion for qualified immunity at

this time."); and Irizarry-López v. Torres-González, 363 F. Supp. 2d 7, 10 (D.P.R. 2005) ("Whether and to what extent Ortiz's involvement in the employment decision was motivated by a discriminatory animus remains an issue in this case which the trier of fact, and not the Court, should decide. Accordingly, Ortiz's qualified immunity argument . . . should be denied given the factual underpinnings."). Because of the issue of material fact with regard to Casillas's involvement in depriving plaintiff of her duties and whether the same was motivated by politically discriminatory animus, Casillas's request to dismiss plaintiff's political discrimination claim on the basis of qualified immunity is denied.[12]

### D.    Supplemental Claims

Federal courts may decline to exercise supplemental jurisdiction over a plaintiff's state law claims if "the district court has dismissed all claims over which it has original jurisdiction." See 28 U.S.C. § 1367(c)(3); González-De-Blasini v. Family Dept., 377 F.3d 81, 89 (1st Cir. 2004); Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998). If all federal claims are dismissed prior to trial, then the state law claims "'should be dismissed as well.'" Rodríguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)). Defendants submit that "since plaintiff has failed to allege any cause of action under federal law, the claims brought forth under supplemental jurisdiction should also be dismissed . . . ." ECF No. 30, at 22 (emphasis omitted). Because plaintiff's federal First Amendment political discrimination claim with regard to the withdrawal of her duties survives defendants' motion for summary judgment, defendants' request for dismissal of the supplemental claims on the basis of § 1367(c)(3) is denied.

---

[12] As to the claim of failure to promote, the qualified immunity defense is moot in view of the previous conclusion with respect to said claim.

With respect to Law 100, however, any claims against Casillas in his official capacity or against PRPA are nonetheless dismissed. Law 100 seeks to prevent discrimination in the workplace based on numerous protected classifications, including political affiliation and political ideas. See P.R. Laws Ann. tit. 29, § 146. Its definition of employer specifically excludes government agencies from coverage unless they "operat[e] as private businesses or enterprises." P.R. Laws Ann. tit. 29, § 151(2). Because, as discussed above, PRPA is an arm of the state, any claims pursuant to Law 100 against it or the Director of HR at PRPA in his or her official capacity must be dismissed with prejudice. See e.g., Torres-Santiago v. Alcaraz-Emanuelli, 553 F.Supp.2d 75, 86 (D.P.R. 2008) (dismissing Law 100 claims against the Puerto Rico Department of Transportation and Public Works based on finding that the same was an arm of the state).

Law 100 does not, however, automatically exclude plaintiff's claims against Casillas in his individual capacity. The Supreme Court of Puerto Rico has held that "contrary to the majority interpretation of Title VII, Puerto Rico's law against discrimination in the workplace, Law 100, does provide for the imposition of supervisor liability" when a plaintiff's supervisor is personally responsible for causing plaintiff's injury. Torres-Santiago, 553 F.Supp. at 86. Therefore, based on the analysis above, plaintiff's Law 100 claim against Casillas in his individual capacity survives with regard to the deprivation of plaintiff's duties as Special Aide to the Office of HR, but is dismissed with prejudice with regard to the allegations that she failed to attain the Head Assistant of Purchasing and Auctions position, for lack of evidence that Casillas caused her not to attain the position.

In contrast to Law 100, The Puerto Rico Whistle-Blower Act, commonly known as Law 115, defines an employer more broadly as "any person who has one or more employees. That

includes the employer's agents." P.R. Laws Ann. tit. 29, § 194. However, plaintiff's Law 115

claim is nonetheless problematic. First, Law 115 provides:

> (a) No employer may discharge, threaten, or discriminate against
> an employee regarding the terms, conditions, compensation,
> location, benefits or privileges of the employment should the
> employee offer or attempt to offer, verbally or in writing, any
> testimony, expression or information before a legislative,
> administrative or judicial forum in Puerto Rico, when such
> expressions are not of a defamatory character nor constitute
> disclosure of privileged information established by law.

P.R. Laws Ann. tit. 29, § 194a. "In order to make out a *prima facie* case under Law 115, a

plaintiff must 'establish, by direct or circumstantial evidence . . . that he or she (1) participated in

an activity protected by [Law 115] and (2) was subsequently discharged or otherwise

discriminated against." Ríos v. Municipality of Guaynabo, 938 F.Supp.2d 235, 259 (D.P.R. 2013)

(citing Collazo v. Bristol-Myers Squibb Mfg., Inc., 617 F.3d 39, 45 (1st Cir. 2010)). A review of

the complaint reveals that plaintiff's Law 115 claim is based on the conclusory allegation that

"[d]efendant's conduct and retaliation practices constitutes [*sic*] a callous or reckless disregard

for Law No. 115 rights to [*sic*] Plaintiff not to be retaliated nor discriminated for choosing to

point out irregularities concerning her work assignments and the jop [sic] posting process to

which she applied." ECF No. 1, ¶ 102. With respect to PRPA and to Casillas in his official

capacity, plaintiff's claims for monetary damages against them are dismissed pursuant to the

doctrine of sovereign immunity, discussed above. As to plaintiff's Law 115 claim against

Casillas in his individual capacity, "the question of individual liability . . . goes unanswered by

the Puerto Rico Supreme Court, and this court has reached conflicting results." Rosario García v.

Bd. of Trustees of Royalty Fund and Mechanized Cargo ILA 1575, Civ. No. 09-2175 (FAB),

2010 WL 5095421, at *6-7 (D.P.R. Sept. 2, 2010) (citing Otero Merced v. Preferred Health, Inc.,

680 F.Supp.2d 388 (D.P.R. 2010)); compare Rivera Maldonado v. Hospital Alejandro Otero

López, 614 F.Supp.2d 181, 198 (D.P.R. 2009) ("The Puerto Rico Court of Appeals [has] found that it stems from the text of the act that the sanctions imposed therein are only against the employer, and thus, the statute contains no provision imposing personal liability.") (citing Vargas Santiago v. Lilliam Álavarez Moore, No. DPE-2004-0541, 2006 WL 3694659, at *5 (P.R. Cir. Nov. 29, 2006)); with Arroyo-Pérez v. Demir Group Intern, 733 F.Supp.2d 322, 324 (D.P.R. 2010) (denying motion to dismiss Law 115 claims for personal liability) (citing Hernandez v. Raytheon Serv. Co.P.R., 05-1937 (CCC), 2006 WL 1737167 (D.P.R. Apr. 27, 2006)) and Ramos-Santos v. Hernandez-Nogueras, 867 F. Supp. 2d 235, 261 (D.P.R. 2012) ("Additionally, claims for violations of Laws 115 and 426 may be brought against individual employees. This court has held that Law 115 allows for individual liability against a supervisor who retaliates against an employee."). Notwithstanding this split of authority, a review of the Proposed Pretrial Order reveals that it makes no reference to Law 115 or any mention that Casillas retaliated against plaintiff in any manner for voicing her concerns regarding her job duties or the selection process for the Head Assistant of Purchasing and Auctions position.[13] In light of the same, plaintiff shall show cause at the Pretrial and Settlement conference why her Law 115 claim should not be dismissed.

Finally, Article 1802 provides that a person who "causes damages to another through fault or negligence" shall be liable in damages. P.R. Laws Ann. tit. 31, § 5141. A plaintiff may not bring claims under Articles 1802 and 1803 based on the same allegations which underlie a

---

[13] The proposed pretrial order states: "This is an action arising under the 1st, [sic] Amendment to the Constitution of the United States of America and 42 U.S.C. § 1983 and § 1988, as well as Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. § 5141 and § 5142; the Constitution of Puerto Rico as a result of the violation of Plaintiff's freedom of association; Law 100 of June 30, 1959, as amended, 29 LPRA § 146-151; Jurisdiction over Federal claims is invoked pursuant to 28 U.S.C. 1331, 28 U.S.C. 1343 and 42 U.S.C. 1983. Supplemental Jurisdiction is requested over the State law based on Law 100; under the Constitution and Laws of Puerto Rico, and; under 28 U.S.C. §1367 . . . ." ECF No. 63, at 3. Local Rule 16(d)(2) requires the parties to provide "a brief factual statement of each party's claim or defense . . . ." Furthermore, a review of plaintiff's proposed jury instructions reveals that she has not proposed an instruction regarding the elements of a retaliation claim; she makes only a conclusory reference to "the right to be free from . . . retaliation" in the damages section of her instructions. ECF No. 75, at 18.

political discrimination claim pursuant to Law 100. <u>Cotto v. Muni. Of Aibonito</u>, Civ. No. 10-2241 (JAG), 2012 WL 1110177, at *19 (D.P.R. April 2, 2012) ("Since the gravamen of Alvarado's state law claim is political discrimination pursuant to Law 100, Alvarado is precluded from also bringing suit under Article 1802 and 1803."); <u>Medina v. Adecco</u>, 561 F.Supp.2d 162, 176 (D.P.R. 2008) ("Medina based her Article 1802 claim on the same conduct that supports her employment law claims; she alleged not independently tortious conduct. Accordingly, the court must dismiss Medina's Article 1802 claim."). A review of the complaint does not reveal allegations of any tortious conduct distinct from that which is related to plaintiff's discrimination claims. Therefore, the Article 1802 and 1803 claims against defendants are dismissed with prejudice.

## V.   CONCLUSION

Based on the foregoing analysis, defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART, as follows. Pursuant to the doctrine of Eleventh Amendment sovereign immunity, all federal claims for monetary damages against PRPA and Casillas in his official capacity are dismissed with prejudice. With respect to plaintiff's cause of action for political discrimination in violation of the First Amendment, her claim with respect to the "deprivation" of her duties as Special Aide for the Office of HR survives, but her claim with regard to the application process for the Head Assistant of Purchasing and Auctions position is dismissed, with prejudice. Casillas' individual capacity request for qualified immunity is DENIED. With regard to plaintiff's supplemental law claims, although defendants' request to dismiss them pursuant to § 1367(c)(3) is DENIED, plaintiff's Law 100 claims are dismissed with prejudice against PRPA and Casillas in his official capacity. Plaintiff's Law 100 claim related to the failure to promote her to the Head Assistant of Purchasing and Auctions position is dismissed

with prejudice as to Casillas in his individual capacity, but the Law 100 claim as to Casillas in his personal capacity, with respect to the allegations that plaintiff was deprived of her duties, survives. All claims against all parties under Articles 1802 and 1803 are dismissed with prejudice. Plaintiff's Law 115 claims for monetary damages against PRPA and the Authority are barred by the doctrine of sovereign immunity and thus are dismissed. At or before the Pretrial and Settlement Conference, plaintiff shall show cause as to why her Law 115 claims for injunctive relief and for monetary damages against Casillas in his individual capacity should not be dismissed.

IT IS SO ORDERED

In San Juan, Puerto Rico, this 28th day of August, 2014.

s/Marcos E. López
U.S. Magistrate Judge